## CHAMBERS *v.* CLEARWATER.

### September, 1864.

#### Affirming 41 *Barb.* 200.

The direction to levy execution upon a particular subject, being an incident to the obtaining payment of the debt by legal process, when a partner gives such direction while acting in the collection of a debt due the partnership, the presumption is that he had the countenance and assent of the other partner;[*] and both are presumptively liable for the trespass, if the levy is wrongful,

A judgment, attempted to be rendered by a judge, who is disqualified by reason of consanguinity with one of the parties, is utterly void, and incapable of being made good by any omission, waiver, or consent.

[*] Compare Brainard *v.* Dunning, 30 *N. Y.* 211; and Armstrong *v.* Dubois, p. 8 of this volume.

Andries Schoonmaker (for whom, on his death pending the action, George Chambers, executor, was substituted), sued Charles H. Clearwater and Silas Wood, for damages, for conversion of a wagon, horses, &c. One Roosa formerly owned the articles, and mortgaged them to Schoonmaker, in December, 1851, to secure one hundred and seventy-five dollars, payable September 1, 1852, with interest. The mortgage contained the usual danger clause, giving the mortgagee a right to take and sell the articles, if at any time he should deem himself insecure. Schoonmaker, plaintiff's testator, claimed the articles under this mortgage.

The defendants had levied on the articles under a judgment against Roosa. The validity of this judgment was the main question involved in the present action.

The present defendants were partners in business, keeping a store at High Falls, Ulster county. In 1852 they had recovered the judgment in question by suing Roosa before a justice of the peace, James H. Elmendorf. Elmendorf was a first cousin of Wood; and a second cousin of Clearwater. It did not appear that any objection on that score was made in the suit before Elmendorf. The summons which Elmendorf issued in that suit was personally served, both parties appeared and consented to an adjournment, and on the adjourned day, they appeared and the cause was tried. Elmendorf gave judgment against Roosa, and issued an execution which he handed to Clearwater, and Clearwater gave it to the constable with instructions to levy on the articles mentioned in the mortgage.

These facts having been proved on the trial of this action, defendants' counsel moved for the discharge of Wood, on the ground that it was not shown that he personally directed the seizure, but the motion was overruled. A motion for a nonsuit was also overruled. Some evidence was given by defendants, but is not material to the decision. A verdict for the plaintiff was given by direction of the court, and defendants excepted.

*The supreme court*, at general term, on appeal, held that the judgment of the justice was absolutely void, and that the other

objections were untenable, and affirmed the judgment. (Reported in 41 *Barb.* 200.)

Defendants appealed.

*Mr. Hardenburgh,* for defendants, appellants;—As to point that judgment was merely voidable and could not be questioned by a stranger, cited, Paddock *v.* Wells, 2 *Barb. Ch.* 331; 2 *R. S.* 275, § 2; Lamoure *v.* Caryl, 4 *Den.* 370; Willoughby *v.* Jenks, 20 *Wend.* 96; Koon *v.* Mazuzan, 6 *Hill,* 44; Hard *v.* Shipman, 6 *Barb.* 621; Lynch *v.* Livingston, 8 *Id.* 463; Tiffany *v.* Gilbert, 4 *Id.* 320; Oakley *v.* Aspinwall, 3 *N. Y.* 547. As to Wood's liability, Fox *v.* Jackson, 8 *Barb.* 355; Gold *v.* Bissell, 1 *Wend.* 216; Oakley *v.* Aspinwall, *above.*

*T. R. Westbrook,* for plaintiff, respondent, respondent;— Beside cases referred to in the opinion, cited, Post *v.* Black, 5 *Den.* 66; Converse *v.* McArthur, 17 *Barb.* 410; Baldwin *v.* The same, *Id.* 415. And as to the partner's liability for a tort, *Story on Partn.* §§ 166, 167; Hawkins *v.* Appleby, 2 *Sandf.* 421; Locke *v.* Sterns, 1 *Metc.* (*Mass.*) 563; How *v.* McCoughan, 3 *Miss.* (3 *Geo.*) 17, 50; *Collyer on Partn.* 457.

BY THE COURT.—DENIO, Ch. J.—I am of opinion that the evidence was sufficient to make out a *prima facie* case against both the defendants, so far as related to the question of the seizure of the property. The defendants were both active in obtaining the judgment against Roosa, and although Clearwater alone gave the direction for seizing the horses and wagon, he should be presumed, in the absence of evidence to the contrary, to have been acting in conjunction with the other defendant in a common enterprise of collecting their joint debt by a seizure of the property in question. Although the commission of a trespass was not within the scope of the partnership enterprise, the collection of the joint debt was a part of that business. The direction to levy the execution upon a particular subject was an incident to the obtaining payment of the debt by legal process, and when one of the partners was found acting in that undertaking, the presumption is that he had the countenance and assent of the other partner.

The plaintiff's mortgage being the earlier title, would have enabled the plaintiff to recover, unless it was shown to be fraudulent. There was no evidence of fraud except the releasing of possession by the mortgagor, but the evidence offered and excluded would have had a tendency in that direction, and should have been received if the defendants were in a position to justify, as judgment creditors to Roosa.

This brings up the question principally argued, whether the justice's judgment was void on account of the relationship between the justice and plaintiffs in the action in which it was recovered. If it was erroneous merely, and not wholly void, it would clothe the defendants with the character of judgment creditors of Roosa, and enable them to contest the *bona fides* of plaintiff's mortgage; but if it void, defendants would be only creditors at large, and the mortgage lien being valid between the parties, the defendants would be trespassers in seizing the property.

The statute declares that " no judge of any court can sit, as such, in any case in which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties." 2 *R. S.* 275, § 2.

It is not denied that a juror who was first cousin to one of the parties, would be excluded by reason of consanguinity, nor that Justice Elmendorf erred in sitting as a judge in the action between the defendants and Roosa.

Arguments have been drawn from the strong language employed by the legislature, which in terms positively forbids a judge, in the position which Elmendorf occupied, from *sitting as such ;* from which it is reasonably argued that where he attempts to do so he is not to be regarded as possessing a judicial character, but as being only a private individual, and that the proceedings are to be considered *coram non judice.* On the other side are adduced the cases of judicial acts contrary to positive law, which are yet held to be valid when produced for a collateral purpose, and impeachable only by a direct proceeding, in which they are subjected to a review.

It may be conceded that, if there were no more direct authority, the present question might involve some doubt. I am

of opinion that it has been settled by authority which we are bound to follow.

In Oakley *v.* Aspinwall, 3 *N. Y.* 547, one of the then judges of this court was found to have taken part in the decision of that case though he was distantly related to one of the defendants. The case was decided by the concurring vote of five judges, of whom he was one. The party to whom he was thus related was shown to have no real interest, being fully indemnified by the actual parties in interest to the litigation. He sat in the case at the request of the other party, who afterward questioned the judgment on the ground that he had done so. On a motion to vacate the judgment and the *remittitur* on that ground, the court held that the judgment was not simply erroneous, but utterly void. It was not denied but that the consent would have cured the error, if there had been jurisdiction; in other words, if it were only error; but it was considered that it was void in the most absolute sense which can be expressed by that term. In the leading opinion prepared by Judge HURLBURT, it was said: "The exclusion wrought by it [the statute] is as complete as is in the nature of the case possible. The judge is removed from the cause and from the bench; or if he will occupy the latter, it must be only as an idle spectator and not as a judge. He cannot sit as such. The spirit and the language of the law are against it."

It is argued that the occasion upon which this decision was made was not one in which the judgment was sought to be availed of collaterally, as in the present case, but it partook rather of the nature of a review; and that is true. But the situation of the question was the same. If any judgment in which the disqualified judge took part could possibly be valid for any purpose, that judgment could have been sustained. The consent which induced and procured the judge to sit would have made the judgment perfectly valid if, under any possible circumstances, it could be made valid. Mr. BROOM, in commenting on the maxim, "*Consensus tollit errorum,*" says, "The maxim is essential to distinguish a proceeding which is merely irregular from one which is completely defective and void. In the latter case the proceeding is a nullity and cannot be waived by any laches or subsequent proceeding of the opposite party."

The reason, upon which judgments palpably illegal and erroneous will yet furnish a justification to parties exceeuting process under them and will be held valid in all collateral proceedings, is that the party affected by them has waived his rights. The waiver, in most cases of this kind, is tacit, and consists in an omission to appeal or bring a writ of error. The defendant is, therefore, held to have consented that the judgment may stand. But if, when he expressly consents, by his counsel, in the most formal and authentic manner, it is yet not held valid, the matter must be one in which no consent will avail. It must, in short, be void; and this court must be held to have determined, in the case referred to, that a judgment attempted to be rendered by a judge, who is disqualfiied by reason of consanguinity with one of the parties, is void in the most extreme sense known to the law, and, therefore, entirely incapable of being made good by any omission, waiver, or express consent. I think this is so, upon principle as well as authority. If one, who has not just pretense of possessing the character of a judge, should summon a party before him at the instance of another, and assume to render a judgment between the parties, no one would insist that it would be valid for any purpose. It would, of course, be utterly void; and would furnish no justification to any one. If it be true, as I think it is, and as the judge who sat on the motion in Oakley *v.* Aspinwall decided, that one prohibited by the statute from sitting as a judge, is to be regarded as not being a judge at all, nor entitled to occupy the bench under any circumstances, except as a spectator, it is the same thing as though he had never been raised to the judicial office. His being entitled to sit as a judge in cases to which the disqualification did not apply would not aid him in any degree in cases to which the disqualification attached.

Chief Judge Bronson dissented from the order made in Oakley *v.* Aspinwall; and it generally detracts somewhat from the confidence we feel in a judgment, that it failed to secure the approval of that eminent and accurate judicial officer. But his dissent was placed in some degree, if not entirely, upon the distinction between a court of superior and one of inferior jurisdiction. I do not understand him to have questioned the correctness of the cases of Edwards *v.* Russell, 51 *Wend.* 63; or

Foot *v.* Morgan, 1 *Hill,* 654. In the first of these cases it was declared by the court, and in the other it was expressly adjudged, that a judgment rendered under the circumstances of the one under consideration was void. In the last case the judgment was offered as a set-off in a subsequent suit between the parties. The chief judge, 1 am confident, proceeded on the distinction referred to, and he would not, I think, have hesitated to pronounce the judgment before Justice Elmendorf void.

It has been suggested that the decision of the motion, in Oakley *v.* Aspinwall, was not itself made by a competent number of judges. But this is a mistake. Only seven judges took part in deciding the motion, Judge TAYLOR not having heard the argument. The law did not then, as it now does, require five judges to concur in the decision. The legislature had declared six to be a quorum, and a majority of a quorum was then competent to give a judgment.

I am in favor of affirming the judgment appealed from.

All the judges concurred, except H. R. SELDEN, J., who was absent.

Judgment affirmed, with costs.